**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**BRIAN SMITH**                                                                                   **PLAINTIFF**

**V.**                                            **CAUSE NUMBER: 3:25-cv-00312-JDM-RP**

**TD AUTO FINANCE LLC, et al.**                                        **DEFENDANTS**

## ORDER AND MEMORANDUM OPINION

Plaintiff Brian Smith financed the purchase of a truck through Defendant TD Auto Finance, LLC—a division of TD Bank, N.A. (collectively TD). To finance the truck, Smith completed and signed a credit application with TD containing an arbitration contract. The arbitration contract's terms allow for either party to elect and pursue arbitration of any dispute or claim arising from the financing transaction.

Some time later, TD repossessed Smith's truck. So Smith filed a state court complaint against TD and its agents who repossessed it. TD then removed the action to this Court.

TD has now filed a Motion to Compel Arbitration [7]. TD asks the Court to enforce the arbitration contract in Smith's signed credit application, which Smith opposes [10]. Smith argues that because he never signed the arbitration contract page, he did not agree to arbitrate the dispute.

But Smith signed the credit application and therein clearly acknowledged and agreed to the application's arbitration contract. Therefore, he agreed to arbitrate his dispute with TD. Accordingly, the Court grants TD's Motion to Compel Arbitration [7].

### Factual and Procedural History

In late 2019, Smith purchased a 2016 Dodge Ram 1500 from Landmark Dodge Chrysler Jeep LLC. Landmark then assigned the contract to TD, which financed Smith's truck purchase.

To get TD's financing, Smith executed a credit application. In exchange for TD reviewing Smith's application, Smith agreed "to all of the terms of the TD Auto Finance LLC Contract of Arbitration contained in [the credit] application[.]" [7-2]. Smith's signature appears on the same page as the notice language, which is presented in bold and underlined type.

TD included its contract of arbitration two pages after the signature page. And the contract of arbitration states, "Any claim or dispute [. . .] which arises out of or relates to this application [. . .] shall, at the election of any of us [. . .], be resolved by a neutral, binding arbitration and not by a court action." [7-2].

In August 2025, TD repossessed the truck from Smith's property. Smith then initiated this action by filing his Complaint [2] in the Circuit Court of Marshall County, Mississippi. In his pro se Complaint [2], Smith asserted claims for equitable relief, conversion, trespass, assault, improper disposition notices, unlawful and deceptive business practices, and bad faith. TD removed the action to this Court under diversity of citizenship jurisdiction. [1]. TD then moved to compel arbitration [7] citing the terms of the credit application's arbitration contract.

## Discussion

This Court employs two analytical steps to determine whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, the Court applies state contract law to determine if the parties entered into an agreement to arbitrate. *Matter of Willis*, 944 F.3d 577, 579 (5th Cir. 2019) (citing *Kubala*, 830 F.3d at 201)). Second, the Court determines if a particular claim is covered by the arbitration agreement. *Id.* But where an arbitration agreement delegates the arbitrability of claims to the arbitrator, the Court only asks if the delegation clause is valid. *Id.*

2

I. **Smith agreed to arbitrate his claims against TD.**

Regarding the first step—whether Smith and TD agreed to arbitrate at all—Smith argues that he did not agree to arbitrate anything with TD because his signature is not on the arbitration contract's terms page.

Under Mississippi law, "[t]he elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Gulf Coast Hospice LLC v. LHC Group Inc.*, 273 So. 3d 721, 734 (Miss. 2019) (quoting *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013)).

Here, Smith only challenges the mutual assent element of the arbitration agreement. As he sees it, the lack of his signature on page 4 of the Credit Application—labeled "TD Auto Finance LLC Contract of Arbitration"—means that he is not bound to arbitrate.

But Smith signed the Credit Application two paragraphs below his acknowledgement that he had read and understood all the arbitration contract's terms. And that acknowledgement is clear:

> This paragraph applies to applications submitted to TD AUTO Finance LLC Only: **IN EXCHANGE FOR THE TIME, EFFORT, AND EXPENSE IN REVIEWING YOUR APPLICATION AND FOR OTHER VALUABLE CONSIDERATION, WHICH IS HEREBY ACKNOWLEDGED, SOLELY AS BETWEEN YOU AND TD AUTO FINANCE LLC, YOU AGREE TO ALL OF THE TERMS OF THE <u>TD AUTO FINANCE LLC CONTRACT OF ARBITRATION CONTAINED IN THIS APPLICATION</u> AND ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF ITS TERMS.**

[7-2] (emphasis in original).

And after the acknowledgement, the "Credit Application: TD Auto Finance LLC Contract of Arbitration" appears in the same document. [7-2]. This is important because in Mississippi, "a

3

person is charged with knowing the contents of any document that he executes." *Southern Healthcare Servs. v. Lloyd's of London*, 110 So. 3d 735, 746 (Miss. 2013) (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1056 (Miss. 2004)) (internal citations omitted).

So Smith clearly acknowledged and agreed to the arbitration contract's terms. That Smith's signature is not on the page with the arbitration contract's terms does not change the fact he executed the entire credit application containing the contract's terms. And he signed the credit application right below his express agreement to those terms. Further, the contract elements Smith does not challenge are all present in the arbitration contract. Thus, it is obvious the parties agreed their disputes may be arbitrated. So Smith is bound by the arbitration agreement.

### II. The arbitrator must decide gateway arbitrability issues.

After a Court has found that an arbitration agreement exists between Smith and TD, the ordinary second step is to determine whether the arbitration agreement covers any of Smith's particular claims. But this particular arbitration contract delegates the arbitrability of claims to the arbitrator. So the Court only asks if the delegation clause is valid. *Matter of Willis*, 944 F.3d at 579.

To determine a delegation clause's validity, the Court must ask if the delegation clause "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* This approach reflects the federal policy in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d. 76 (1995).

Here, the arbitration contract states that "[a]ny claim or dispute [. . .] (including any dispute

4

over the interpretation, scope, or validity of this Important Contract of Arbitration or the arbitrability of any issue) [. . .] shall [. . .] be resolved by a neutral, binding arbitration [. . .]." [7-2].

This clause is substantively similar to delegation clauses in *Kubala* and *Rent-A-Center*. In both cases, the Fifth Circuit and Supreme Court respectively found the delegation clauses valid and enforceable. The language used in those two purported delegation clauses left challenges to the agreements to be decided in arbitration. *Kubala*, 830 F.3d at 204; *Rent-A-Ctr.*, 561 U.S. at 66. And the delegation clause in *Kubala* specifically left challenges to interpretation, scope, and validity to be decided in arbitration—just like the arbitration contract does here. *Kubala*, 830 F.3d at 204.

Because the arbitration agreement delegates gateway issues of arbitrability to an arbitrator, the Court need not decide which of Smith's claims are subject to arbitration. Therefore, the Court finds that TD's Motion to Compel Arbitration [7] should be granted.

### III. Smith's additional arguments lack merit.

Though the Court has determined that a valid and enforceable arbitration agreement exists, it will still address Smith's other arguments.

#### A. *Election of Arbitration*

Smith argues that the arbitration agreement is not mandatory. He cites language from the agreement that "at the election of any of us," any claim or dispute shall be resolved by arbitration. [11]. In Smith's view, since he elected to resolve his claims in court, the contract language supports his right to make and enforce that decision.

But Smith plainly misreads the agreement. "At the election of any of us" clearly means that either Smith or TD can unilaterally elect to have any dispute resolved in arbitration. And once that election is made *by either party*, the arbitration agreement trumps the other party's choice to

5

proceed in court. Under the agreement's plain language, Smith does not have to agree to arbitration if TD elects to pursue it, as TD has done here.

  B.  *Waiver*

Smith also argues that by invoking this Court's jurisdiction to compel arbitration, TD waived its right to arbitrate and instead demonstrated a choice to engage in litigation. Smith cites no supporting authority.

And merely removing an action to federal court and seeking to compel arbitration under an arbitration agreement does not sufficiently invoke the judicial process to constitute waiver. *See Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656 (5th Cir. 1995) (holding that defendant who removed an action, moved to dismiss, moved to stay proceedings, answered the complaint, and exchanged discovery did not waive the defense when the defendant moved to compel arbitration as soon as it discovered the dispute was arbitrable).

The only actions TD has taken are to remove this case from state court [1] and file a motion to compel arbitration [7]. Based on its conduct, TD has neither waived its right to arbitrate nor demonstrated a preference to proceed in court.

  C.  *Unconscionability*

While Smith next argues that the arbitration agreement is both procedurally and substantively unconscionable, he proves neither.

According to Smith, the agreement is procedurally unconscionable because it was presented in small-print, boilerplate paperwork. He also points to the adhesive nature of the agreement.

Under Mississippi law, the adhesive nature of a contract's arbitration agreement is not procedurally unconscionable unless "the stronger party's terms are unnegotiable and 'the weaker

6

party is prevented by market factors, timing or other pressure from being able to contract with another party on more favorable terms or to refrain from contracting at all.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002) (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)).

As TD points out, Smith presented no evidence that market factors, timing, or other pressures prevented him from financing his truck with another company. And as mentioned, the credit application emphasized—just above Smith's signature line—that he agreed to the arbitration contract. The arbitration contract's terms were later presented in the same signed document, in a font only marginally smaller than the font on the signature page. Smith's procedural unconscionability argument lacks merit.

Smith also argues that the arbitration agreement is substantively unconscionable because it "operates in a one-sided manner . . . [requiring] the consumer to submit [his claims] to arbitration." [11]. But in Mississippi, an agreement that guarantees both parties the same rights is not substantively unconscionable. *United Credit Corp. v. Hubbard*, 905 So. 2d 1176, 1179 (Miss. 2004).

Here, Smith again misunderstands the agreement's language. The agreement gave both parties the ability to compel arbitration. And had TD wanted to pursue a claim against Smith in court, Smith could have elected arbitration. Thus, the agreement is not substantively unconscionable.

D.   *Scope of Arbitration*

Finally, Smith argues that certain claims are not subject to arbitration because they sound in tort, not contract. But as discussed above, where an arbitration agreement delegates gateway

7

arbitrability issues such as these to an arbitrator, the Court will leave the arbitrability of the claims to the arbitrator.

## Conclusion

For these reasons, TD Auto Finance LLC's Motion [7] is **GRANTED**. All of Smith's claims shall be submitted to arbitration under the terms set forth in the Contract of Arbitration. The parties shall also notify the Court as to the outcome of the arbitration within 10 days thereafter.

This case is **STAYED** until further order of the Court.

**SO ORDERED**, this the 13th day of February, 2026.

                                                /s/ James D. Maxwell II
                                                UNITED STATES DISTRICT JUDGE
                                                NORTHERN DISTRICT OF MISSISSIPPI